[Civ. No. 6371.   Third Appellate District.—January 18, 1940.]

W. P. RICH, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

E. H. Christian for Petitioner.

Fred B. Wood, Lawrence G. Allyn and Norman Meller, as *Amici Curiae,* in support of Petitioner.

Everett A. Corten for Respondents.

PULLEN, P. J.—This is a review of the findings and award of the Industrial Accident Commission, whereby that body directed that petitioner take nothing on account of his asserted claim for compensation, due to injuries sustained.

The facts are brief and undisputed. At the time of the accident hereinafter referred to, W. P. Rich was a state senator, having been reelected in 1938 for a term of four years. On December 20, 1938, he was notified by Lieutenant Governor George J. Hatfield that he had been appointed a member of a special senate committee to attend the funeral of Senator McColl, to be held in Redding on December 23d. This appointment and all of the activities of this committee occurred after the adjournment of the 1938 session of the legislature *sine die* and not during any special or subsequent session. Senator Rich accepted the assignment, and in a state car assigned for that purpose, operated by a state employee, he proceeded from his home in Marysville to Redding, where he attended the funeral of his deceased colleague. After the funeral services, as Senator Rich was returning to his home in the same car and operated by the same state employee, the car was overturned, causing serious injury to petitioner.

The question for determination here is whether or not the injury suffered by petitioner occurred in the course of or arising out of his employment as a state senator, or stating it more directly, is attending funerals of fellow senators reasonably incidental to the duties of a state senator?

It is admitted that there was no express legislative or constitutional authority for the appointment of a committee of the senate to attend the funeral of a member of the

legislature, although for many years it has been customary for senators to attend funerals after adjournment of the senate as members of a committee designated by the presiding officer of that body, that is by the Lieutenant Governor. It is also admitted that a state senator is an employee within the meaning of the Workmen's Compensation Act (sec. 3351b, Labor Code). Since petitioner is claiming the benefit of that act the burden is placed upon him (Labor Code, sec. 5705) to show that at the time of the injury he was performing services growing out of and incidental to his employment, and that he was acting within the course of his employment. (Sec. 3600, Labor Code.)

While it is true there is no express provision of the law requiring the senate to pay tribute to a deceased member, it has been a custom of long standing to pay such public tribute to a deceased member, thereby upholding the respect and dignity of its office, and it might well be considered a part of its function and duty.

Public money has often been used to erect monuments, commemorating the life of some great man, and bestowing dignity and honor upon the office he once had held. In the city of Sacramento the state maintains a burying ground where may be interred a person who, at the time of his death, was a state officer or member of the senate or assembly. (Sec. 3596, Pol. Code.) Attendance at funeral rites of a deceased public official by one holding a public position is not alone done as a mark of respect to the deceased and his family but is a tribute to the office he held and tends to maintain a public respect for such office and the government of which it is a part. It would seem, therefore, that the attending of funerals of fellow public officers can, in proper cases, be said to be reasonably included in the duties of a public officer, and in so doing, such public officer is in effect and in law, acting in his official capacity, and especially so when the attending officer was expressly designated by his superior officer to be present in such representative capacity.

Considerable stress is laid upon the fact that the injury to petitioner occurred while the legislature was not in session, and it is urged that the act of a senator in attending a funeral could not be considered as applying directly or indirectly to the business of the legislature, and that the

principles laid down in the case of *Special Assembly Interim Committee* v. *Southard*, 13 Cal. (2d) 497 [90 Pac. (2d) 304], and *Swing* v. *Riley*, 13 Cal. (2d) 513 [90 Pac. (2d) 313], are here decisive.

In the Southard case, *supra*, the court held that neither the senate nor assembly could authorize a committee to act after the legislature had adjourned *sine die*. In the case of *Swing* v. *Riley*, *supra*, the court held that both houses of the legislature acting together by a concurrent resolution did not have the power to appoint a committee to act after the final adjournment of the legislature.

In those two cases the court was considering the legislative functions only of the legislature, and the effect of single house and joint resolutions, and held that such resolutions are not substitutes for the statutory authority necessary to permit legislative committees to subpoena witnesses and to incur expenses after the adjournment of the legislature *sine die*.

The duties of the committee of which petitioner was a member, did not depend upon the legislative functions of the senate, nor was it an investigating or fact-finding committee. The difference in purpose of an interim committee to find the facts and report back to the legislature, and a committee to pay respect to a deceased member of that branch of our government, is so obviously different that we cannot rest our conclusions upon the cited cases.

While the primary duty of a senator is legislative, there is also imposed upon him other and nonlegislative duties which are incidental to that primary function. Some nonlegislative duties are when a senator is sitting as a member of a court of impeachment, or sitting to receive the returns of the election of a governor, or choosing one for the office of governor in case of a tie vote. In *People* v. *Blanding*, 63 Cal. 333, it was held the confirmation of appointments by the senate was not a legislative function. Other instances might be readily called to mind; and there is nothing in the cited cases that attempts to deny to the legislature powers other than legislative, or powers incidental thereto.

When the legislature is acting in a nonlegislative capacity, the members thereof are still acting within the scope of their authority and employment.

Nor are these cited cases authority for the proposition that a state senator ceases to be a public officer upon final ad-

journment of the legislature and prior to the end of the term for which he is elected, or for the proposition that, as a public officer, he does not have any powers whatsoever of any non-legislative duties, however limited they may be, incidental to his status as a public officer. If such were true, not only would a state senator be denied the right of exercising non-legislative powers while the legislature was in session, but it would deny to the legislature itself the power by statute to impose post session proper nonlegislative duties upon a state senator. ■ That members of the legislature are considered officers of the state during their entire term of office is evidenced by certain constitutional limitations, such as accepting other office (art. IV, sec. 19) and their manner of payment of salary. (Art. IV, sec. 23.) The Interim Committee cases, *supra*, upon which respondent relies, in fact concede that by statute such power exists to invest in a legislative committee the right to exercise legislative functions subsequent to final adjournment.

While it is true, as contended by respondent, that a public officer's powers may not be enlarged by custom, nevertheless, under the workmen's compensation laws, at least statutory or constitutional duties of a public officer or employee may be enlarged by custom so as to entitle him to compensation benefits. It was held in *San Bernardino County* v. *Industrial Acc. Com.*, 217 Cal. 618 [20 Pac. (2d) 673], that "an employee is in the course of his employment when he does those reasonable things which his contract with his employer, expressly or impliedly, permits him to do"; and *Department of Public Works* v. *Industrial Acc. Com.*, 128 Cal. App. 128 [16 Pac. (2d) 777], is support for the contention that custom may enlarge the scope of employment of public employees. In *Entremont* v. *Whitsell*, 13 Cal. (2d) 290 [89 Pac. (2d) 392], the Supreme Court of this state recognizes that the rules of law applicable to workmen's compensation cases may differ from the rules applicable to other types of cases. In other jurisdictions we find the same rule: *City of Alexandria* v. *McClary*, 167 Va. 199 [188 S. E. 158]; *Grym* v. *City of Virginia*, 193 Minn. 62 [257 N. W. 661]; *Scrivner* v. *Franklin School Dist.*, 50 Idaho, 77 [293 Pac. 666].

If, therefore, we can depend upon the rule that custom may be looked to for a guide we find that the duty involved in this case is one inherent to the public office of state senator.

We find it established and has been the custom for many years for members of the senate to pay their tribute of respect to a deceased fellow member or a member of the executive or judicial branch of our government, and for the president of the senate to designate certain members to attend such funerals as officially representing all the other members of the senate.

It therefore appears to us that not only by reason of the rules of the Workmen's Compensation Law but also upon the broad basis that attending funerals of fellow senators, when done by a member especially designated to attend as a representative of that body, is incidental to the duties of the office of a state senator, and that petitioner has fully sustained the burden placed upon him.

Therefore the injury sustained by petitioner occurred in the course of his employment and in furthering the business of his employer, in the rendering of a service to the memory of, and adding dignity and respect to the office of a deceased officer of the state.

The findings and award of the Industrial Accident Commission are annulled and set aside.

Thompson, J., and Tuttle, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 18, 1940. Curtis, J., and Edmonds, J., voted for a hearing.